IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

Shahnaz Poursaied,

        Plaintiff,

vs.                                                    No.  19-02891-JTF-dkv

State of California;
California Board of
Registered Nursing;
and Chino Hospital[1],

        Defendants.

---

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

---

On December 30, 2019, Shahnaz Poursaied ("Poursaied") filed a *pro se* complaint alleging violations of civil rights under 42 U.S.C. § 1983 on a court-supplied form against the State of California, Attorney General (the "Attorney General"), the California Board of Registered Nursing (the "Board"), and Chino Hospital (collectively "the Defendants.") (Compl., ECF No. 1.)

Before the court is the Attorney General and the Board's February 6, 2020 motion to dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] In its motion to dismiss, Chino Hospital identifies itself as Enloe Medical Center. For purposes of this report and recommendation, the defendant will be referred to as Chino Hospital as stated on the docket report.

(Mot. to Dismiss, ECF No. 19.)  Poursaied filed a response in opposition to the Attorney General and the Board's motion to dismiss on February 18, 2020.  (Resp., ECF No. 20.)  The Attorney General and the Board filed a reply on February 28, 2020.  (Reply., ECF No. 22.)  Also before the court is Chino Hospital's February 27, 2020 motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.  (Chino Hospital's Mot. to Dismiss, ECF No. 21.)  On March 9, 2020, Poursaied filed a response. (Resp., ECF No. 23).  Chino Hospital did not file a reply.  This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)  For the following reasons, it is recommended that the motions to dismiss be granted.

## I.   PROPOSED FINDINGS OF FACT

Poursaied filed her 87-page complaint, including exhibits, on December 30, 2019.  (Compl., ECF No. 1.)  This action arises out of an incident that occurred on February 3, 2018 at Enloe Medical Center located in Chico, California.  (*Id.* at 4.)  At the time of events, Poursaied was employed by Trustaff Travel Agency and was contracted as a registered nurse to Enloe Medical Center.  (Pl.'s Facts 45, ECF No. 1-1.)  On February 3, 2019, Poursaied was assigned to a prison inmate with ascending paralysis and sepsis, who complained to Poursaied of on-going constipation.  (Pl.'s Facts

2

41, ECF No. 1-1.)   Poursaied performed a rectal examination and digital disimpaction on the patient. *(Id.)* Poursaied alleges she was accused by a prison guard of using "force" when performing deimpaction of fecal matter on the inmate. (Compl. 4, ECF No. 1.)

Poursaied was licensed as a registered nurse in California and Tennessee. (Pl.'s Facts 34, ECF No. 1-1.) As a result of the incident on February 3, 2018, Poursaied's license was revoked during administrative proceedings in California on July 3, 2019 due to "Gross Negligence, Incompetence, and Unprofessional Conduct in her performance of a treatment against the patient's will and without physician's order in a correctional facility." *(Id.)* Poursaied's license in the State of Tennessee was revoked by the Tennessee Board of Nursing on November 21, 2019 based on the incident that occurred on February 3, 2018. *(Id.)*

Poursaied alleges the prison guard's use of the word "force" to describe her performance of the procedure was "sexually offensive and cause[d] sexual harassment" as well as a hostile work environment. (Compl. 4, ECF No. 1.) She further alleges Enloe Hospital did not provide her with orientation and wrongfully terminated her, which affected her license and damaged her reputation. *(Id.)*

Poursaied alleges violations of civil rights under 42 U.S.C. § 1983 against state or local officials including "defamation," "serious damage to [her] reputation," "prohibited use of [the First

3

Amendment] at workplace by wrongfully and criminally using word 'force,'" "sexually offensive allegation against [the First Amendment] without evidence and for purpose to damage," "prohibited use of [the First Amendment] by defendants," "violation of [the Fifth and Sixth Amendment] [to] revoke [her] license against [her] right to [justice]," and "[T]itle VII of the civil right violation." (*Id.* at 3.)

For relief, Poursaied seeks $1,000,000 "after tax for serious damage to [her] reputation, [well-being], and for violation of her bill of rights;" to receive backpay from the "start of crime on [February 2, 2018 until the] date [the] case [is] settled;" to be provided Medicare; a formal apology by the State of California; for her nursing license to be returned unharmed; and to be paid $10,000 every month until the end of her life. (*Id.* at 5.)

II.   PROPOSED CONCLUSIONS OF LAW

A.   Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue which a court must determine before reaching other issues. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by

Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "A party seeking to invoke the jurisdiction of the federal courts . . . bears the burden of establishing that such jurisdiction exists." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008)(per curiam). When a party challenges a court's subject matter jurisdiction under Rule 12(b)(1) and raises the defense of the Eleventh Amendment, it is considered a factual attack on the court's jurisdiction and thus no presumption of truth applies to the plaintiff's allegations. *See Oshop v. Tenn. Dep't of Children's Serv.*, No. 3:09-CV-0063, 2009 WL 1651479, at *2-3 (M.D. Tenn. June 10, 2009); *Chapman v. Troutt*, No. 3:10-CV-01009, 2011 WL 2160941, at *2 (M.D. Tenn. June 1, 2011).

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of claims where the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Courts may exercise personal jurisdiction over a defendant where that defendant has "certain minimum contacts" with the forum state such that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be either specific or general, depending on the nature of the defendant's contacts with the forum state.

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Rule 12(b)(5) of the Federal Rules of Civil Procedure allows a party to assert the defense of insufficient service of process by motion. Fed. R. Civ. P. 12(b)(5). When a defendant files a motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, the plaintiff "bears the burden of executing due diligence in perfecting service of process and showing that service was made." *Mullins v. Kalns,* No. 99-4031, 2000 WL 1679511 at *8-9 (6th Cir. Nov. 3, 2000); *see also Portis v. Caruso,* No. 1:09-cv-846, 2010 WL 3609364 (S.D. Mich. July 28, 2010) ("The plaintiff bears the burden of proving that proper service was effected."); *Grubb v. Collins,* No. 1:09-cv-263, 2010 U.S. Dist. LEXIS 90984, at *2 (S.D. Ohio July 4, 2010) (noting that the plaintiff bears the burden of showing that proper service has been made).

To survive a Rule 12(b)(6) dismissal following the United States Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the

6

complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption to truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3. ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to 'less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." (internal quotation marks omitted)); *Payne v. Sec'y of*

7

*Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.    <u>Dismissal for Lack of Personal Jurisdiction as to Chino Hospital</u>

Chino Hospital contends that this court lacks personal jurisdiction.  As stated above, personal jurisdiction may be either specific or general, depending on the nature of Chino Hospital's contacts with the forum state.  General personal jurisdiction is appropriate where the defendant's contacts with the forum state are so "continuous and systematic" that jurisdiction is proper, even when the suit does not arise out of the defendant's actions or contacts within the forum state.  *Helicopteros*, 466 U.S. at

414. Poursaied brought this action in the United States District Court for the Western District of Tennessee. Poursaied fails to allege sufficient facts to establish that Chino Hospital has sufficient contacts with Tennessee that are so "continuous and systematic" as to render jurisdiction proper. Nor does Poursaied's response allege sufficient facts for this court to find general personal jurisdiction over Chino Hospital.

A court may exercise specific personal jurisdiction over a defendant where that defendant has sufficient minimum contacts in the forum state that arise out of or directly relate to the cause of action. *Williams v. Firstplus Home Loan Owner Trust*, 310 F. Supp. 2d 981, 991 (W.D. Tenn. 2004). Specifically, the plaintiff must demonstrate that (1) the defendant "purposely availed" himself of the privilege of acting in the forum state or deliberately caused an outcome in the forum state, (2) the defendant's activities in the forum state gave rise to the cause of action, and (3) the defendant's acts or consequences have a substantial enough connection with the forum state to make exercise of jurisdiction reasonable. *Id.* In determining whether a particular exercise of jurisdiction is consistent with due process, the inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Rush v. Savchuk*, 444 U.S. 320, 327 (1980) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204). Moreover, "the plaintiff cannot be the only link between

the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277 (2014). "It is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (citations omitted).

Poursaied has failed to establish that Chino Hospital is subject to this court's exercise of specific personal jurisdiction. Poursaied's action arises from incidents that occurred solely in California. Poursaied fails to allege facts in either her complaint or her response which show Chino Hospital engaged in any conduct which forms the necessary connection to Tennessee. Rather, it appears from her complaint that Poursaied is the only connecting factor between Chino Hospital and Tennessee. Therefore, this court may not exercise specific jurisdiction over Chino Hospital.

Additionally, personal jurisdiction over Chino Hospital is not available under Tennessee's long arm statutes, which provide a list of out-of-state actions that allow for personal jurisdiction to be exercised over a non-resident defendant. Tenn. Code Ann. §§ 20-2-214 and 223 specify actions which allow the exercise of personal jurisdiction over Tennessee non-residents. Specifically, most of the actions must occur in Tennessee, such as "transacting any business" or the "causing tortious injury by an act or omission" in this state. Tenn. Code Ann. § 20-2-223(a). As already stated, none of the allegedly unlawful actions occurred in

the state of Tennessee, but rather occurred in California. Accordingly, it is recommended that all claims against Chino Hospital be dismissed for lack of personal jurisdiction. Chino Hospital also argues that Poursaied lacks standing and fails to state a claim; however, in light of the court's recommendation that it lacks personal jurisdiction over Chino Hospital, this court finds it unnecessary to analyze these issues.

C.    Dismissal for Lack of Subject Matter Jurisdiction as to the Attorney General and the Board

The Attorney General and the Board contend that all claims against them must be dismissed for lack of subject matter jurisdiction because each defendant is entitled to immunity under the Eleventh Amendment. (Mot. to Dismiss, ECF No. 19.) Poursaied asserts a § 1983 claim: that, acting under color of law, the Attorney General and the Board caused a deprivation of federally protected rights. (Compl., ECF No. 1.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead that she suffered (1) a deprivation of rights secured by the Constitution or federal statutes that is (2) committed by a person acting under color of state law. *Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). However, if the Eleventh Amendment bars suit, the court lacks subject matter jurisdiction and "shall dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Henderson v. Southwest Tenn. Cmty. Coll.*, 282 F. Supp. 2d 804 (W.D. Tenn. 2008)

(dismissing the claim pursuant to Rule 12(b)(1) as barred by the Eleventh Amendment).

1.    *Poursaied's § 1983 Claims for Monetary Damages Against the Board and the Attorney General in Their Official Capacities*

Poursaied has named the Attorney General and the Board in their official capacity as defendants in her suit and seeks monetary damages. (Compl., ECF No. 1.)  The Attorney General and the Board have raised the Eleventh Amendment as a bar to Poursaied's claim and as a basis for this court's lack of subject matter jurisdiction. (Mot. to Dismiss, ECF No. 19.)

Official and individual capacity liability under § 1983 should be carefully distinguished. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)(citations omitted)(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Individual capacity suits, in contrast, seek to impose personal liability upon a government official for actions taken under color of state law, where the plaintiff recovers only against the government official's personal assets. *Id.*  Claims against government officials in their official capacities are tantamount to a suit against the governmental entity. *Graham*, 473 U.S. at 166 (citation omitted).

The Attorney General is the "chief law officer of the State."
Cal. Const. art. V, § 13.   The Attorney General is an arm of the
state, and therefore, actions brought against the Attorney General
in the Attorney General's official capacity is in reality an action
against the State of California.   *See Rhea v. Brown*, No. 2:17-
2267-JPM-CGC, 2019 WL 7756068, at *8 (W.D. Tenn. Oct. 17, 2019);
*see also Deanco Healthcare, LLC v. Becerra*, 365 F. Supp. 3d 1029
(C.D. Cal. 2019), *aff'd,* No. 19-55155, 2020 WL 1638422 (9th Cir.
Apr. 2, 2020) (holding that the Attorney General for the
State of California was an arm of State, and thus, was entitled to
Eleventh Amendment immunity from suit in federal court).

The Board falls within the Department of Consumer Affairs and
consists of nine members.   Cal. Bus. & Prof. Code § 2701.   The
Board is responsible for administering the statutory scheme
governing licensing of registered nurses in the State of
California.   *Id.* at § 2732.   Recently, the California Board of
Registered Nursing was found to be a California state agency.   *See
Sabatini v. California Bd. of Registered Nursing*, No. 18-CV-2036-
AJB-AGS, 2019 WL 1082445, at *2 (S.D. Cal. Mar. 7, 2019); *see also
Forster v. Cty. of Santa Barbara,* 896 F.2d 1146, 1149 (9th Cir.
1990); *Bonner v. Med. Bd. of Cal.,* Case No. 2:17-cv-00445-KJM-DB,
2018 WL 4699996, at *5-6 (E.D. Cal. Sept. 30, 2018) (dismissing
without leave to amend all claims against the Medical Board of
California based on Eleventh Amendment sovereign immunity); *Mir v.*

*Med. Bd.* of Cal., Case No. 12-cv-2340-GPC-DHB, 2013 WL 1932935, at *4-5 (S.D. Cal. May 8, 2013) (same), aff'd, 552 F. Appx. 723 (9th Cir. 2014); *Yoonessi v. Albany Med. Ctr.,* 352 F. Supp. 2d 1096, 1104 (C.D. Cal. 2005). The Sixth Circuit has held that state professional conduct and licensing review boards are entitled to Eleventh Amendment immunity.  *See, e.g., Williams v. Mich. Bd. of Dentistry,* 39 F. App'x 147, 148-49 (6th Cir. 2002) (holding that the agency defendants, Michigan Board of Dentistry, the Michigan Department of Public Health, and the Department of Licensing and Regulation, were entitled to sovereign immunity under the Eleventh Amendment); *see also Lawrence v. Chabot,* 182 F. App'x 442, 450 (6th Cir. 2006) (dismissing the State Bar of Michigan and the Michigan Board of Law Examiners as defendants because of their Eleventh Amendment sovereign immunity).  Accordingly, the Board is a state agency.  Thus, an action against the Board is an action against the State.

Because the Attorney General and the Board are entities of the State of California, a suit against these entities is a suit against the State of California.  The Eleventh Amendment bars suits against state agencies and suits in which the state itself is named as a defendant because "a state is not a person within the meaning of 42 U.S.C. § 1983." *Will v. Michigan*, 491 U.S. 58, 71 (1989); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

14

"[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)(internal citations omitted). "Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court." *Hixon v. Tennessee*, No. 14-cv-1087, 2015 WL 1486362, at *2 (W.D. Tenn. Mar. 31, 2015); *see also Graham*, 473 U.S. at 165-66; *Pennhurst*, 465 U.S. at 98-100; *Quern v. Jordan*, 440 U.S. 332, 343-45 (1979). Congress did not abrogate the Eleventh Amendment when it enacted § 1983, *Edelman*, 415 U.S. at 675-77, and Tennessee has not waived its sovereign immunity, Tenn. Code Ann. § 20-13-102(a). Accordingly, Poursaied's claims for monetary damages against the Attorney General and the Board in their official capacity are barred by the Eleventh Amendment. As such, the court lacks subject matter jurisdiction over those claims. It is therefore recommended that all claims against the Board and the Attorney General, in his official capacity, for monetary damages be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

> 2.   *Poursaied's § 1983 Claims for Injunctive Relief Against the Board and the Attorney General in Their Official Capacities*

Poursaied also seeks other forms of relief from the Board and the Attorney General in their official capacities. Specifically, Poursaied seeks a formal apology by the State of California and for her nursing license to be returned unharmed. (Compl. 5, ECF No. 1.) These requests for relief may be reasonably construed as seeking injunctive relief.

As determined above, *see supra* Part II.B.1., the claims against the Board and the Attorney General in their official capacities amount to claims against the State of California. As such, the Eleventh Amendment bars those claims. A plaintiff, however, may overcome a state's sovereign immunity and seek prospective injunctive relief if the state has consented to suit, if Congress has properly abrogated the state's immunity, or if the exception outlined in *Ex parte Young*[2] applies. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000). As stated above, *supra* Part II.B.1., Tennessee has not waived its sovereign immunity and Congress has not abrogated Tennessee's immunity in this type of action.

---

[2] Under the *Ex parte Young* doctrine, a federal court can issue prospective injunctive relief against a state official in his or her official capacity to prevent future federal constitutional or federal statutory violations. 209 U.S. 123 (1908); *see also Frew v. Hawkins*, 540 U.S. 431, 437 (2004)(stating that the Eleventh Amendment permits suits against state officials for prospective injunctive relief in order to "ensure the enforcement of federal law").

The *Ex parte Young* exception does not apply. As to the Board, the *Ex parte Young* doctrine does not apply because this exception to the Eleventh Amendment only allows prospective injunctive relief against a state official in his or her official capacity. *See generally Ex parte Young*, 209 U.S. 123 (1908). Accordingly, the Eleventh Amendment bars any claim against the Board, including Poursaied's claims for injunctive relief because no exception applies.

As to the Attorney General in the Attorney General's official capacity, "in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court [must] conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)(quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *see also Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003)(noting that a complaint that is "based entirely upon past acts and not continuing conduct that, if stopped, would provide a remedy to [the plaintiff]" does not trigger the *Ex parte Young* exception).

Poursaied's complaint is based entirely upon past acts which have already occurred. Poursaied seeks relief which is focused on the Attorney General and the Board's past acts and not based on continuing conduct. The Attorney General issuing a public apology

17

and the Board returning her nursing license unharmed would not now provide Poursaied with a remedy to the alleged constitutional violations because the alleged violations are no longer occurring. Accordingly, the *Ex parte Young* exception does not provide Poursaied with a way of overcoming the State of Tennessee's immunity under the Eleventh Amendment. It is therefore recommended that all of Poursaied's § 1983 claims against the Board and the Attorney General in their official capacities for injunctive relief be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

D.    Dismissal for Failure to Properly Serve the Attorney General and the Board

The Attorney General and the Board move to dismiss Poursaied's claims against them for insufficiency of service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. (Mot. to Dismiss, ECF No. 19.) The Attorney General and the Board assert that Poursaied failed to effectuate service on them in their official capacities in compliance with either federal or state procedural rules. (*Id.*)

As determined above, *see supra* Part II.B.1., the Attorney General and the Board are agencies of the State of California. Rule 4(j) of the Federal Rules of Civil Procedure establishes the methods of service of process on foreign, state, and local governments:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or, (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j).  According to California law, "Service of summons in all actions on claims against the state shall be made on the Attorney General."  Cal. Gov. Code § 955.4.  California allows service via the following methods: personal delivery; substituted service if personal delivery is not possible after reasonable diligence; service by first-class mail; and service by publication with court authorization.  *See* Cal. Code Civ. P. §§ 415.10, 415.20(b), 415.30, 415.50.  Service by mail is completed only when a written acknowledgment of receipt of summons is executed.  Cal. Code Civ. P. § 415.30(c).

Poursaied did not effectuate service under the Federal Rules of Civil Procedure or the California Code of Civil Procedure. Poursaied certifies she sent the summons to the Board by certified post.  (Pl.'s Aff. of Service on the Board, ECF No. 12.)  Poursaied deposited the summons and complaint in the United States mail, sending it certified, addressed to "State of California Attorney General Office," at a post office box.  (Pl.'s Aff. of Service on the Attorney General, ECF No. 10.)  There was no acknowledgement of receipt and no other method of service was utilized for the Board or the Attorney General under California law.  Therefore,

service was not proper under California law or the Federal Rules of Civil Procedure.

Poursaied has the burden of establishing the validity of service. *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006). In Poursaied's response to the Attorney General and the Board's motion to dismiss, she does not address service of the summons on the Attorney General and the Board. (Resp., ECF No. 20.) Therefore, Poursaied's response is insufficient to meet her burden of establishing the validity of service. Accordingly, the court recommends that Poursaied's claims against the Attorney General and the Board be dismissed for improper service under Rule 12(b)(5).

E.    Dismissal for Failure to State a Claim for Which Relief May Be Granted as the Attorney General and the Board

Poursaied alleges violations of civil rights under 42 U.S.C. § 1983 against the Attorney General and the Board including damage to her reputation, for sending her name to a national data collection, and for the Board's revocation of her license. (Compl. 3, ECF No. 1.) The Attorney General and the Board contend that all claims against them must be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Attorney General and the Board are entitled to quasi-judicial prosecutorial immunity. (Mot. to Dismiss, ECF No. 19.)

As attachments to Poursaied's complaint, Poursaied includes the Default Decision and Order of the Board revoking her California license as a registered nurse and the Accusation filed by the Attorney General's Office on behalf of the independent Executive Officer of the Board. (Default Decision & Order, ECF. No. 1-1; Accusation, ECF No. 1-1.) While not explicitly alleged, the crux of Poursaied's § 1983 claim appears to be that the Executive Officer of the Board brought the complaint against Poursaied's license to the Board through the Attorney General, and the Board revoked her license "against [her] right to justice." (Compl. 3, ECF No. 1.)

Absolute immunity against suits for money damages is "well established" for judges, and such immunity has also been extended to non-judicial officers performing "quasi-judicial" duties. *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir. 1994). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush,* 38 F.3d at 847. "The Supreme Court has endorsed a functional approach in determining whether an official is entitled to absolute immunity. Under this approach, a court 'looks to' the nature of the function performed, not the identity of the actor who performed it." *Collyer v. Darling,* 98 F.3d 211, 221 (6th Cir. 1996) (citation omitted) (quoting *Bush,* 38 F.3d at 847). The party

21

claiming absolute immunity bears the burden of establishing a justification for that immunity. *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432 (1993); *Burns v. Reed,* 500 U.S. 478, 486 (1991). To determine whether the doctrine of judicial immunity applies to officials other than judges, a court must determine whether performance of a function requires exercise of discretionary judgment. *Antoine,* 508 U.S. at 436; *see also Imbler v. Pachtman,* 424 U.S. 409, 422–24 (1976). The Supreme Court has ruled upon the applicability of quasi-judicial immunity to state agencies:

> Because the legal remedies already available to the defendant in [an agency enforcement] proceeding provide sufficient checks on agency zeal, we hold that those [agency] officials [who perform certain functions analogous to those of a prosecutor and] who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

*Butz v. Economou,* 438 U.S. 478, 516 (1978).

Previously, *Butz* has been applied to medical licensing boards, granting the members of the boards absolute immunity when sued for damages in their individual capacity. *See Watts v. Burkhart*, 978 F.2d 269 (6th Cir.1992); *Bettencourt v. Bd. of Registration in Med. of Mass.*, 904 F.2d 772 (1st Cir.1990); *Horwitz v. State Bd. of Med. Exam'rs of Colo.,* 822 F.2d 1508 (10th Cir.1987). In *Watts v. Burkhart*, the Sixth Circuit found quasi-judicial immunity barred the claims brought by an African American

physician against members of the Tennessee Board of Medical Examiners alleging a denial of equal protection in connection with the revocation of his medical license. 978 F.2d 269, 271-72 (6th Cir. 1992)(en banc)(alleging that he was treated differently than similarly situated non-minority physicians).

In order to determine whether immunity applies, the court must determine whether the agency official: (1) performed a traditional prosecutorial or adjudicatory function; (2) initiated or decided cases sufficiently controversial that, in the absence of immunity, he would be subject to numerous damages actions; and (3) prosecuted or adjudicated disputes against a backdrop of safeguards designed to protect the plaintiffs' constitutional rights. *Bon-Ing*, 2016 WL 6680813, at *4 (citing *Williams v. Michigan Bd. of Dentistry*, 39 F. App'x 147, 148-49 (6th Cir. 2002), and *Quatkemeyer v. Kentucky Bd. of Med. Licensure*, 506 F. App'x 342, 346-49 (6th Cir. 2012)).

In deciding whether the Attorney General and the Board are entitled to immunity, the court must first determine whether they performed a traditional prosecutorial or adjudicatory function. The Board is statutorily tasked with the responsibility to take disciplinary action against a licensed nurse, which is derived from the state's inherent power to protect public health and safety. Cal. Bus. & Prof. Code §§ 2701, 2750, 2759; *Griffiths v. Super. Ct.*, 96 Cal. App. 4th 757, 768-69 (Cal. Ct. App. 2002).

The Board is responsible for disciplining the registered nurses it has licensed, up to and including revocation of that license.  Cal. Bus. & Prof. Code. At §§ 2701, 2750, 2759.

An Executive Officer, who must be a currently licensed nurse, is appointed by the Board, but is not a member of the Board, with duties delegated by the Board such as commencing disciplinary proceedings and fulfillment of the Board's responsibility to prosecute all persons guilty of violating the Nursing Practices Act.  Cal. Bus. & Prof. Code §§ 2708, 2715 (a).  To maintain the Board's independence, the Executive Officer brings forth charges under the Nursing Practices Act.  During the administrative process, the Attorney General is requested by the Executive Officer to carry out his prosecutorial function before the Board by way of representing the Executive Officer in filing an Accusation and prosecuting it before the Board.  The Attorney General does so because he generally "has charge, as attorney, of all legal matters in which the State is interested."  Cal. Gov't Code § 12511.

According to the Accusation attached to the complaint, the Attorney General represented the Executive Officer in his prosecutorial function against Poursaied's license. (Accusation, ECF No. 1-1.)  Poursaied defaulted in the proceeding before the Board and, under California Government Code section § 11520(a), the Board adjudicated the matter based on investigatory reports, exhibits and statements concerning the Accusation charges, and

found them to be true and correct by clear and convincing evidence. (*Id.* at 39-41.)    The authority vested in the Board to find statutory and regulatory violations, to adjudicate administrative proceedings brought by the Executive Officer through the Attorney General, to make adjudications and revoke Poursaied's license based on its consideration of information from investigations demonstrates the type of independent, discretionary authority that characterizes prosecutorial and judicial action. *See Quatkemeyer*, 506 F. App'x at 347.  Because the Attorney General represented the Executive Officer before the Board, the Attorney General performed a traditional prosecutorial function. Thus, the Attorney General and the Board's functions were prosecutorial and/or adjudicatory in nature, and it is recommended that the first criteria for absolute immunity is satisfied in this case.

It is recommended that the second factor has also been satisfied in this case, as the licensing of registered nurses and prosecution of disciplinary proceedings is an area which has the potential of subjecting the Board to numerous actions for damages. The instant case, in which Poursaied seeks money damages of $1 million, back pay, and $10,000 per month for the period of Poursaied's life, provides an example of the type of financial stake involved in the Board's authority to adjudicate administrative proceedings brought by an Executive Officer through the Attorney General.  Qualified immunity is warranted to ensure

that the Board can make important decisions concerning revoking licenses in the interest of the public without fear of litigation.

Finally, absolute immunity would not be available if the Attorney General and the Board's actions "were not subject to restraints and safeguards comparable to those built into the archetypal judicial process." *Watts*, 978 F.2d at 275.  It is recommended that the third factor is satisfied here, as the Attorney General and the Board adjudicated the dispute against a backdrop of safeguards designed to protect Poursaied's constitutional rights.  Disciplinary proceedings of the Board are conducted under California's Administrative Procedures Act.  Cal. Bus. & Prof. Code § 2750.  The procedures include service of accusations, notice of the right to hearing, ability to request discovery, notice of the hearing, the right to representation by an attorney, to present evidence, right to cross-examine witnesses, and entitlement to issuance of subpoenas.  Cal. Gov't Code §§ 11 505, 11 506, 11507.6, 11509.  After the Board issues a revocation order, the licensee has the right judicial review by filing a petition for writ of mandate.  Cal. Gov't Code § 11523.  These procedures satisfy the absolute immunity requirement for adequate procedural safeguards.

Because the Attorney General and the Board satisfy all three factors of the quasi-judicial immunity analysis, they are entitled to immunity.  Accordingly, it is recommended that Poursaied's

26

claims against the Attorney General and the Board be dismissed for failure to state a claim under Rule 12(b)(6).

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that the Attorney General's and the Board's motion to dismiss Poursaied's claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), for lack of service pursuant to Fed. R. Civ. P. 12(b)(5), and for failure to state a claim for which relief may be granted pursuant to Rule 12(b)(6) be granted. It is further recommended that Chino Hospital's motion to dismiss for lack of personal jurisdiction be granted.

Respectfully submitted this XX day of April 2020.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.